UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ZONE SPORTS CENTER INC. LLC, et al.,

    Plaintiffs,

  v.

RED HEAD, INC,

    Defendant.

Case No. 11-cv-00634-JST

**ORDER DISMISSING CLAIM TO RESCIND SETTLEMENT AGREEMENT FOR LACK OF SUBJECT MATTER JURISDICTION AND DENYING INDEPENDENT ACTION TO SET ASIDE JUDGMENT**

In this action for "rescission" of both a settlement agreement and a stipulated judgment entered in a prior action, the Court issued an order to show cause why the action should not be dismissed for lack of subject matter jurisdiction. For the reasons set forth below, Plaintiffs' claim for rescission of the settlement agreement reached in the prior action is DISMISSED for lack of subject matter jurisdiction, and Plaintiffs' request to set aside the stipulated judgment is DENIED.

## I.    BACKGROUND

The parties to this action or their privies previously litigated various disputes with respect to a licensing agreement governing the use of Defendant Red Head's trademarks and other intellectual property ("the licensing agreement") in an unrelated action in this district captioned Red Head, Inc. v. Fresno Rock Taco, LLC, Case No. 3:08-cv-05703 EMC ("the prior action").[1] In the prior action, Red Head sued Fresno Rock Taco ("FRT") for breach of the licensing agreement, trademark infringement, and other related claims. The parties eventually entered into a confidential settlement agreement, and on March 20, 2009, the court entered a stipulated judgment and permanent injunction ("the stipulated judgment") barring FRT and its agents from using or

---

[1] The parties entered into the licensing agreement on December 7, 2006. Under the terms of the licensing agreement, Fresno Rock Taco was permitted to use certain trademarks and intellectual property associated with Sammy Hagar and Red Head's "Cabo Wabo" brand.

selling Red Head's trademarks and other intellectual property. Case No. 3:08-cv-05703, ECF No. 51. The court explicitly stated in the stipulated judgment that it "shall retain continuing jurisdiction to enforce the terms of this Stipulated Judgment and Permanent Injunction." Id. at 5.

More than eighteen months after the entry of the stipulated judgment in the prior action, on October 14, 2010, Plaintiffs Zone Sports Center, Fresno Rock Taco, and Milton P. Barbis filed this action against Red Head, Sammy Hagar, Marco Monroy, SKYY Spirits, and Gruppo Campari for claims arising out of the negotiation and performance of the licensing agreement that was litigated in the prior action and for rescission of the confidential settlement agreement reached in the prior action. Compl., ECF No. 1. The claims arising out of the licensing agreement were brought under various federal and California laws, including the Lanham Act, the Sherman Act, the Clayton Act, the Racketeer Influenced and Corrupt Organizations Act, California's Cartwright Act, and the California Franchise Act.[2] Id. The claims for rescission of the confidential settlement agreement were brought under California law. Id.

On Defendants' motion, the Court dismissed most of the claims in the complaint with prejudice. ECF No. 86. The Court held that the claims premised on the licensing agreement were barred by res judicata because they arose out of the same transactional nucleus of facts as the claims in the prior action, there was identity of parties between the two cases, and the stipulated judgment entered by the court in the prior action constituted a final judgment on the merits. Id. at 5-9. The Court also held that all but one of Plaintiffs' claims for rescission of the confidential settlement agreement were futile. Id. at 8-9; see also ECF No. 101. The only surviving claim was one for rescission of the confidential settlement agreement on the ground of duress under California Civil Code Section 1689. Id.

Plaintiffs amended their complaint twice. In the current iteration of the complaint, FRT and Barbis bring a single claim against Red Head for rescission of the confidential settlement

---

[2] The rest of the claims in the complaint are for breach of the licensing agreement, rescission of the licensing agreement, mail fraud, wire fraud, common law fraud, intentional infliction of emotion distress, and intentional interference with prospective economic advantage.

agreement on the ground of duress under California Civil Code Section 1689.[3] Second Am. Compl. ("SAC"), ECF No. 102. Plaintiffs allege that Barbis signed the confidential settlement agreement under duress because Barbis knew that Sammy Hagar hired a hitman to kill him. SAC ¶¶ 98-112.

After this action was reassigned to this Court, the Court sua sponte issued an order to show cause why this action should not be dismissed for lack of subject matter jurisdiction ("OSC"). The Court noted that the claim for rescission of the confidential settlement agreement, which is governed by California Civil Code Section 1689, does not invoke federal question jurisdiction and that the allegations in the SAC do not invoke diversity jurisdiction. ECF No. 134.

In their response to the OSC, Plaintiffs state explicitly for the first time in this action that they seek to "challenge[] the validity" of the stipulated judgment entered in the prior action. ECF No. 135 at 2. In each of the prior iterations of the complaint, including the SAC, Plaintiffs had sought to rescind the confidential settlement agreement, not the stipulated judgment, and had requested as their remedy general and punitive damages of $100,000,000.[4] See ECF Nos. 1, 102. Plaintiffs have attached to their response a proposed third amended complaint ("TAC") in which they request "rescission" of both the confidential settlement agreement *and* the stipulated judgment on the grounds of duress and clarify that their claim for rescission rests on both California law and the "federal common law of rescission." ECF No. 135, Ex. 3, TAC at 21. The Court accepts the proposed TAC as the new operative complaint given that the amendments clarify the relief that Plaintiffs seek and because Red Head does not oppose the filing of an amended complaint that does not contain new factual allegations or claims. See ECF No. 136.

## II. DISCUSSION

**A. The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claim for Rescission of the Confidential Settlement Agreement**

---

[3] California Civil Code Section 1689 allows a party to a contract to rescind the contract "[i]f the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence . . ." Cal. Civ. Code § 1689(b)(1).

[4] The Court granted Red Head's motion to strike Plaintiffs' request for damages. ECF No. 109.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations and quotation marks omitted). A district court has the authority to "raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action." See Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002).

Unless a federal court expressly retains jurisdiction over the enforceability or validity of a settlement agreement, a federal court cannot entertain an action to enforce or undo a settlement agreement if that action lacks an independent basis for federal jurisdiction.

The Supreme Court held in Kokkoken that the "[e]nforcement of [a] settlement agreement . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." 511 U.S. at 378. In reaching this holding, the Supreme Court reasoned that "[n]o case of ours asserts, nor do we think the concept of limited federal jurisdiction permits us to assert, ancillary jurisdiction over any agreement that has as part of its consideration the dismissal of a case before a federal court." Id. at 380. A court may exercise ancillary jurisdiction, however, to resolve disputes arising out of a court order or decree that expressly retains jurisdiction over a settlement agreement or that incorporates the terms of a settlement agreement. Id. at 381. The Ninth Circuit has held that the principles in Kokkoken apply "with equal force" to "effort[s] to undo rather than to enforce a settlement agreement." See Camacho v. City of San Luis, 359 Fed. App'x 794, 798, 2009 WL 4912617 (9th Cir. 2009) (holding that a district court did not abuse its discretion when it declined to exercise jurisdiction over a request to undo a settlement agreement over which the court had not previously retained jurisdiction).

Here, the Court retained jurisdiction over the stipulated judgment, but it did not retain jurisdiction over the confidential settlement agreement. The stipulated judgment does not contain any provision retaining jurisdiction over the confidential settlement agreement. It also does not incorporate the terms of the confidential settlement agreement. The stipulated judgment states

4

merely that "the parties have entered into a Confidential Settlement Agreement, and have stipulated and consented to the entry of this Stipulated Judgment and Permanent Injunction. Entry of this Stipulated Judgment and Permanent Injunction shall not extinguish the parties' rights and obligations under the Confidential Settlement Agreement." Case No. 3:08-cv-05703, ECF No. 51 at 3. This language suggests that the terms of the confidential settlement agreement are separate from the terms of the stipulated judgment. Accordingly, under <u>Kokkoken</u>, Plaintiffs' claim to rescind the confidential settlement agreement must have an independent basis for subject matter jurisdiction.

Plaintiffs have not shown that such an independent basis for jurisdiction exists. The allegations in the TAC are insufficient to invoke diversity jurisdiction under 28 U.S.C. § 1332. Federal courts have jurisdiction over actions in which there is diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Each of the parties to this action, namely FRT, Milton Barbis, and Red Head, Inc., are citizens of California. <u>See</u> TAC ¶¶ 4-6; Answer ¶¶ 4-6, ECF No. 105. Accordingly, diversity of citizenship does not exist.

The allegations in the TAC also are insufficient to invoke federal question jurisdiction under 28 U.S.C. § 1331. Federal courts have jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A district court has federal question jurisdiction over an action if, under the well-pleaded complaint rule, the court determines that "a right or immunity created by the Constitution or laws of the United States" is an essential element of the plaintiff's cause of action. <u>Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund</u>, 636 F.3d 538, 541 (9th Cir. 2011). The TAC contains two causes of action, both of which are for "rescission of the stipulated settlement agreement and the stipulated judgment and permanent injunction" on the ground of duress. Neither of these causes of action contains as an essential element a right or immunity created by the Constitution or laws of the United States.

The first cause of action arises out of California Civil Code Section 1689; it is clear that this claim does not invoke federal question jurisdiction.[5]

---

[5] This claim is titled "Second Cause of Action" in the TAC. TAC at 20.

1  The second cause of action arises out of the "federal common law of rescission," which
2  Plaintiffs allege is "grounded in law which is exclusive to the federal courts; i.e.
3  copyright/trademarks."[6] TAC ¶ 1. Plaintiffs argue in their response to the OSC that the Court has
4  jurisdiction over this claim because, in the prior action, "RHI pleaded that FRT had violated the
5  trademark statute and copyright statute in Title 15 and the preemptive nature of Title 15 converts
6  any trademark state claim into a federal cause of action." ECF No. 135 at 5. With these
7  convoluted statements, Plaintiffs appear to contend that the Court has jurisdiction over disputes
8  pertaining to the confidential settlement agreement on the basis that the prior action involved
9  claims brought under the federal trademark and copyright statutes. This contention fails in light of
10 Kokkoken, which requires any dispute arising out of a settlement agreement over which the court
11 did not retain jurisdiction to have an independent jurisdictional basis. Plaintiffs' argument is
12 further undermined by United Commercial Ins. Serv., Inc. v. Paymaster Corp., in which the Ninth
13 Circuit addressed a dispute involving a settlement agreement reached in a prior action for claims
14 brought under the Lanham Act. 962 F.2d 853, 856 (9th Cir. 1992). In United, the Ninth Circuit
15 explicitly held that "[t]he construction and enforcement of settlement agreements are governed by
16 principles of local law which apply to interpretation of contracts generally" and that "[t]his is true
17 even though the underlying cause of action is federal." Id. (internal citations and quotation marks
18 omitted).

19 While Plaintiffs correctly assert that some contractual disputes are governed by the federal
20 common law of contracts, Plaintiffs have not shown that their claim involves such a dispute. The
21 federal common law of contracts "controls the interpretation of a contract entered pursuant to
22 federal law when the United States is a party." Klamath Water Users Protective Ass'n v.
23 Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999); see also N. Side Lumber Co. v. Block, 753 F.2d
24 1482, 1484 (9th Cir. 1985) (holding that a contractual claim "arises under federal law because
25 federal common law of contracts applies to contracts with the federal government"). Here,
26 Plaintiffs have not shown that the confidential settlement agreement involves the United States in

---

[6] This claim is titled "First Cause of Action" in the TAC. TAC at 17.

United States District Court
Northern District of California

any capacity. Accordingly, the claim for rescission of the confidential settlement agreement is not governed by the federal common law of contracts.

Finally, the Court cannot exercise supplemental jurisdiction over Plaintiffs' claim to rescind the confidential settlement agreement. "District courts have discretion to hear pendent state claims where there is a substantial federal claim arising out of a common nucleus of operative fact." Hoeck v. City of Portland, 57 F.3d 781, 785 (9th Cir. 1995) (citing 28 U.S.C. § 1367(a)).

Here, the federal claims that Plaintiffs asserted in their initial complaint were not sufficiently substantial to confer subject matter jurisdiction, as such claims were barred by res judicata. A federal claim is not sufficiently substantial to confer subject matter jurisdiction when it is "obviously frivolous or plainly insubstantial." See Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288 (1910). "Frivolous filings are those that are both baseless and made without a reasonable and competent inquiry." Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir.1990) (en banc) (internal quotation marks omitted). Courts in this circuit routinely hold that a claim that is barred by res judicata is frivolous. See, e.g. Nothwang v. Payless Drug Stores Nw., Inc., 139 F.R.D. 675, 676 (D. Or. 1991) (holding that "the filing of the complaint in this action was frivolous" because "[t]he doctrine of res judicata barred any attempt to file a new complaint"); Joseph v. Linehaul Logistics, Inc., CV 13-08-M-DWM, 2013 WL 2019513, at *5 (D. Mont. May 14, 2013) (holding that a claim barred by res judicata is frivolous because "no reasonable attorney could have concluded that [the claim] isn't barred by res judicata").

The federal claims in the initial complaint were premised on the licensing agreement that was litigated in the prior action. ECF No. 1. The Court dismissed such claims at the outset of this litigation on the basis that they were barred by res judicata. ECF No. 86. Given that the law of res judicata is well settled, and because the federal claims arose out of the same transactional nucleus of facts as the claims in the prior action, there was identity of parties between the two cases, and the stipulated judgment entered by the court in the prior action constituted a final judgment on the merits, any attorney who had conducted a reasonable and competent inquiry prior to filing the claims should have concluded that the claims were baseless. See ECF No. 86 at 5-9. Because the

7

federal claims were insubstantial, there is no federal jurisdiction to which the rescission claim could have attached. See Gibson v. Chrysler Corp., 261 F.3d 927, 935 (9th Cir. 2001) ("If there is no 'original jurisdiction,' there can be no supplemental jurisdiction either, for there is no jurisdiction to which supplemental jurisdiction can attach.") (internal quotation marks omitted).

Plaintiffs argue that "[i]t would appear that after the passage of time, the issue of supplemental jurisdiction was settled and a trial date was set." ECF No. 134 at 3. While the Court recognizes that this action has been pending for more than two years and that, prior to the reassignment of this case, the Court had not made any determination as to its jurisdiction over the rescission claim, the Court has an ongoing obligation to ensure that subject matter jurisdiction exists prior to reaching the merits of any claim and to dismiss any claim over which it lacks jurisdiction. See Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1116 (9th Cir. 2004).

## B. The Court Construes Plaintiffs' Claim for Rescission of the Stipulated Judgment as One for Setting Aside the Judgment Under Rule 60

While the Court lacks jurisdiction to resolve disputes pertaining to the confidential settlement agreement, the Court has jurisdiction to resolve disputes pertaining to the stipulated judgment because it expressly retained jurisdiction over it. See Case No. 3:08-cv-05703, ECF No. 51 at 5 ("[T]his Court shall retain continuing jurisdiction to enforce the terms of this Stipulated Judgment and Permanent Injunction."); see also Kokkonen, 511 U.S. at 380 (noting that a court may assert ancillary jurisdiction "to manage its proceedings, vindicate its authority, and effectuate its decrees").

Here, Plaintiffs request to "rescind" the stipulated judgment on the basis that they were under duress at the time they entered into the confidential settlement agreement that gave rise to the stipulated judgment. The proper vehicle for setting aside a judgment is Federal Rule of Civil Procedure 60, which permits a court to relieve a party from a final judgment or order. A party may seek relief from a judgment either by making a motion under Rule 60(b) or by filing an independent action under Rule 60(d). The Court has the authority to construe Plaintiffs' request as either a motion brought under Rule 60(b) or as an independent action under Rule 60(d) because the substance of the relief sought is what controls, not the label of the submissions. See 11

8

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 2868 (3d ed. 1998) ("A party is not bound by the label used in the party's papers. A motion may be treated as an independent action or vice versa as is appropriate.").

The Court cannot construe the request as a motion under Rule 60(b). Motions under Rule 60(b) may be made on the grounds of (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or "misconduct by an opposing party"; (4) a void judgment; (5) a satisfied judgment; (6) or "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

The Court cannot construe Plaintiffs' claim as a motion brought under reasons (1), (2), or (3), because such motions cannot be made "more than a year after the entry of the judgment or order or the date of the proceeding," and here, Plaintiffs filed their request to set aside the judgment more than a year after the stipulated judgment was entered in the prior action. Fed. R. Civ. P. 60(c)(1). When a motion under reasons (1), (2), or (3) is time-barred, the court lacks jurisdiction to determine that motion. See Nevitt v. United States, 886 F.2d 1187, 1188 (9th Cir. 1989) (holding that the "district court was without jurisdiction to consider" a motion brought under Rule 60(b)(2) because the motion was brought more than a year after the judgment was entered).

The Court also cannot construe Plaintiffs' claim as a motion brought under reasons (4), (5), or (6). A motion under Rule 60(b)(4) would be proper only if the judgment at issue actually is void and not merely voidable, as Plaintiffs claim it is. 12 James Wm. Moore et al., Moore's Federal Practice ¶ 60.44 (3d ed. 1997). A motion under Rule 60(b)(5) is inappropriate because such a motion can be brought only when the judgment at issue has been satisfied. Finally, a motion under Rule 60(b)(6) would not be apt because Rule 60(b)(6) "is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment," and no such circumstances have been alleged here. United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993).

Accordingly, the only way to construe Plaintiffs' request to set aside the judgment is under Rule 60(d), which allows a court to "entertain an independent action to relieve a party from a

9

1  judgment, order, or proceeding" when a party lacks the ability to make a motion under Rule 60(b).
2  Fed. R. Civ. P. 60(d)(1). Such an action is an action in equity. See 11 Charles Alan Wright,
3  Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 2868 (3d ed. 1998) ("The
4  reference to independent action is to what had been historically known simply as an independent
5  action in equity to obtain relief from a judgment.") (citation and internal quotation marks omitted).
6  An independent action does not require an independent basis for jurisdiction, as the action is
7  considered a "continuation of the former suit." United States v. Beggerly, 524 U.S. 38, 46 (1998)
8  (citation omitted).

### C. Plaintiffs Have Not Shown that Setting Aside the Stipulated Judgment is Justified

The Supreme Court has held that "an independent action should be available only to prevent a grave miscarriage of justice." Beggerly, 524 U.S. at 47. Indeed, independent actions are "reserved for those cases of injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata." Id. at 46-47 (citation and internal quotation marks omitted). A partying bringing an independent action must make "a strong showing to overcome the policy favoring finality of judgments." 12 James Wm. Moore et al., Moore's Federal Practice ¶ 60.82 (3d ed. 1997). Courts generally will not set aside a judgment unless the party seeking relief shows that it is free of fault or negligence and that it has not delayed in seeking relief. Id. ¶ 60.82 ("[T]he courts have strictly applied the traditional rule that equity will set aside a judgment only when the party seeking relief shows . . . entire freedom from fault or neglect on the part of himself or his agents.").

Here, Plaintiffs have failed to make a strong showing that vacating the judgment would prevent a grave miscarriage of justice.

First, they provide no explanation for having waited nineteen months to seek to rescind the settlement agreement and for having waited more than four years to seek to set aside the judgment. Though an independent action to set aside a judgment does not have a specific time limitation, such an action is subject to laches. See Fed. R. Civ. P. 60 advisory committee's note ("Where the independent action is resorted to, the limitations of time are those of laches or statutes of limitations."). "Laches is an equitable time limitation on a party's right to bring suit." Kling v.

10

1    Hallmark Cards Inc., 225 F.3d 1030, 1036 (9th Cir. 2000). The laches inquiry measures delay
2    "from the time that the plaintiff knew or should have known about the potentfial claim at issue."
3    Id. In the TAC, Plaintiffs allege that, in 2008 and 2009, they were threatened by at least one
4    hitman hired by Hagar. See TAC. ¶¶ 40, 43, 93. Counsel for Plaintiffs has stated that the threats
5    ended "when Barbis agreed to settle the case."[7] ECF No. 130 at 1. Yet, Plaintiffs did not file this
6    action until October 4, 2010, more than a year and a half after they allegedly were threatened.
7    More importantly, Plaintiffs did not request to set aside the judgment until they responded to the
8    OSC on April 18, 2013, more than four years after the alleged threats occurred. See ECF No. 135.
9    It appears that, were it not for the OSC, Plaintiffs would not have sought to have the judgment set
10   aside. These circumstances severely undermine any notion that a grave injustice would take place
11   if the stipulated judgment were not set aside now.
12        Second, Plaintiffs have not shown that their claim of duress is meritorious. Under
13   California law, a party may rescind a contract "[i]f the consent of the party rescinding, or of any
14   party jointly contracting with him, was given by mistake, or obtained through duress, menace,
15   fraud, or undue influence, exercised by or with the connivance of the party as to whom he
16   rescinds, or of any other party to the contract jointly interested with such party." Cal. Civ. Code §
17   1689(b)(1). Thus, to succeed on their rescission claim, Plaintiffs must show that the actions of
18   Red Head or Hagar, who does business as Red Head, caused Plaintiffs to experience duress at the
19   time that they entered into the confidential settlement agreement.
20        Plaintiffs allege that Barbis signed the confidential settlement agreement because he
21   learned that Hagar had hired at least one hitman to kill him. Id. ¶ 107 ("*[I]t was not until the first*
22   *and then the second hitmen were hired* that lead Barbis to very seriously fear for his life and that
23   of his family and *that knowledge was the proximate causes* [sic] which lead [sic] Barbis to consent

---

[7] The Court considers the factual statements of Plaintiffs' counsel to be judicial admissions, as "statements of fact contained in a brief may be considered admissions of the party in the discretion of the district court." Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 227 (9th Cir. 1988) ("Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.").

to settle the case which he would otherwise not [sic] settled."); see also id. ¶¶ 40-43.[8] Though this action has been pending for more than two years and the parties have had ample opportunity to conduct discovery, Plaintiffs still cannot point to any direct and admissible evidence showing that Hagar had anything to do with the alleged hitmen. The only material evidence on this issue is the deposition testimony of Barbis' gardener, Gabriel Zaragoza, which is inadmissible hearsay.

Zaragoza testified that he saw an unidentified car parked in front of Barbis' home on multiple occasions and that he learned from his uncle and cousin that the individual driving the car was a hitman that Hagar had hired to kill Barbis.[9] ECF No. 129, Ex. B., Zaragoza Dep. at 15:20-18:23; 20:8-21:20. Zaragoza stated during his deposition that, apart from the statements made by his uncle and cousin on this issue, he had no other reason to believe that Hagar hired the hitman. Id. at 22:12-23:3. Zaragoza further testified that he does not know why his cousin or uncle believed that Hagar had hired the hitman. Id. 19:4-5. Zaragoza refused to provide the names of his uncle and cousin during his deposition. Id. at 13:13-17. Because Zaragoza has no personal knowledge about the purported connection between the hitman and Hagar, Zaragoza's testimony on this issue is hearsay and thus is inherently unreliable. See Orr v. Bank of Am., NT & SA, 285 F.3d 764, 778 (9th Cir. 2002) ("Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'") (citation omitted); United States v. Monaco, 735 F.2d 1173, 1177 (9th Cir. 1984) ("Hearsay, inadmissible under an exception, is unreliable . . .").

Moreover, Plaintiffs' own evidence and allegations raise the inference that a combination of factors, not just Barbis' knowledge of the hitman, contributed directly to Barbis' decision to sign the settlement agreement. First, Plaintiffs admit in the TAC that, prior to signing the confidential settlement agreement, Barbis experienced "emotional duress" as a result of "the nine lawsuits filed after December 22, 2008, the injunctions pending against FRT, the withdrawal of counsel," "the need to file an Answer immediately," and Hagar's death threats. TAC ¶¶ 36-43, 93.

---

[8] The allegations in the pleadings are judicial admissions. Am. Title Ins. Co.,861 F.2d at 227.
[9] Plaintiffs object to the deposition excerpts submitted by Red Head on the basis that such excerpts were not properly authenticated. The Court overrules the objection, as Red Head properly authenticated the excerpts in accordance with Civil Local Rule 7-5.

1  Second, Plaintiffs submitted a letter written by Arlene Costa, a therapist who treated
2 Barbis for anxiety and depression after the stipulated judgment was entered. ECF No. 130, Ex. 4.
3 In that letter, Costa states that Barbis reported feeling distressed prior to entering into the
4 confidential settlement agreement because (1) of negative media reports about "his failed business
5 venture"; (2) he was being sued by multiple litigants; (3) he was accused of insurance fraud; and
6 (4) he received death threats. ECF No. 130, Ex. 4 at 1-2. Costa further asserts that all of these
7 "chronic unremitting stressors" impacted Barbis' "ability to think clearly and make decisions
8 freely and without coercion from others . . . in the first three months of 2009," which is when
9 Barbis was considering signing the confidential settlement agreement. Id. at 2.

10  These allegations and evidence significantly weaken Plaintiffs' duress claim because they
11 lessen the likelihood that the proximate cause of Barbis' decision to sign the confidential
12 settlement agreement was his belief that Hagar hired the hitmen. See In re Cheryl E., 161 Cal.
13 App. 3d 587, 600 (Cal. Ct. App. 1984) ("A contract cannot be rescinded when it appears that
14 consent would have been given and the contract entered into notwithstanding the duress, menace,
15 fraud, undue influence, or mistake relied upon.").

16  Given that this case has been pending for more than two years, the Court is not convinced
17 that, if this case were allowed to move forward, Plaintiffs would be able to offer any additional
18 material evidence to affect its conclusion that their duress claim is unmeritorious. For this reason,
19 and given Plaintiffs' significant and unexplained delay in seeking to set aside the stipulated
20 judgment, the Court cannot conclude that a grave miscarriage of justice would result if the
21 stipulated judgment is not set aside. Accordingly, Plaintiffs' independent action to set aside the
22 stipulated judgment under Rule 60(d) is DENIED.

### III. CONCLUSION

Plaintiffs' claim to rescind the confidential settlement agreement is DISMISSED for lack of subject matter jurisdiction. Plaintiffs' request to "rescind" the stipulated judgment is DENIED. The Clerk is ordered to terminate this action.

//
//

**IT IS SO ORDERED**.

Dated: May 22, 2013

_____
JON S. TIGAR
United States District Judge